WAREHOUSE UNION, LOCAL 860, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 79–2086.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 28, 1981.

Decided April 17, 1981.

Duane B. Beeson, San Francisco, Cal., of the bar of the Supreme Court of California pro hac vice by special leave of Court with whom Robert Baptiste, Washington, D. C., was on the brief for petitioner.

Eric Moskowitz, Attorney, N. L. R. B., with whom Robert E. Allen, Acting Associate Gen. Counsel and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., were on the brief, for respondent.

Before McGOWAN, Chief Judge, and ROBINSON, Circuit Judge, and PARKER,* United States District Judge for the District of Columbia.

BARRINGTON D. PARKER, District Judge:

The National Labor Relations Board found that the petitioner Warehouse Union, Local 860 (Union or Local 860), violated the National Labor Relations Act, as amended, 29 U.S.C. § 151 *et seq.*, by failing to provide fair representation to certain workers during contract bargaining negotiations with the employer Emporium.[1] Specifically, the Board found that the Union violated § 8(b)(1)(A) of the Act and committed an unfair labor practice by failing to advise the membership of the clerical unit, which it represented, of prior threats of job loss by the employer if the wage increases demanded during negotiations were granted. Local 860 represented the clerical unit throughout the contract negotiations.

The Warehouse Union petitioned the Court to review and set aside the Board order. The Board has filed a cross-application requesting enforcement of its order. For the reasons set out below we sustain the Board's findings and determination that the Union violated the Act.

## BACKGROUND

The factual findings of the administrative law judge (law judge) were adopted by the Board and are briefly summarized. Warehouse Union, Local 860, represented the warehousemen employed by the Emporium, a California retail sales corporation. Local 860 agreed to represent a unit of thirteen clericals which had been transferred to its jurisdiction in 1972. Twelve of these thirteen clericals were women. In the summer of 1976, Local 860 entered into negotiations with Emporium concerning a renewed contract for 1976–1979. Before the negotiations commenced, the clerical employees alerted the Union that they wanted a wage increase equal to that demanded by the warehousemen, namely, a 70-cent increase.

Early in the negotiations, the Union representatives presented the wage demand to the employer. The negotiators for Emporium made it clear that such a proposal was unacceptable and asserted flatly that such wages would result in the elimination of the entire clerical unit. Such unequivocal statements were made by the employer's representatives several times during the course of the negotiations. There was testimony that in response to such statements the Union representatives replied that they "didn't want the broads in the first place" but now they were stuck with them. Joint Appendix, (J.A.) at 7. With the knowledge of these statements, the Union representatives persisted in demanding the increase without consulting the clericals whom they represented.

Ultimately the wage increase was granted and the employees voted to accept the new contract. Thereafter, on October 15, Emporium terminated the clerical operation and permanently laid off the employees in that unit.

## ANALYSIS

■ The standard of fair representation required of a union was enunciated by the

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The Board's opinion and order are reported at 236 N.L.R.B. 844 (1978).

Supreme Court in *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967) and subsequently followed by this circuit, *e. g., Branch 6000, National Association of Letter Carriers v. N. L. R. B.,* 595 F.2d 808, 811 (D.C.Cir.1979); *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 310 v. N. L. R. B.,* 587 F.2d 1176, 1181 (D.C.Cir.1978). In *Vaca,* an employee discharged for poor health sought the union's help in regaining his job. The union decided not to take the grievance to arbitration because of insufficient medical evidence. The Supreme Court reversed the holding of the Missouri Supreme Court and held that under the applicable federal standard there was no violation since the union's acts were not proven to be arbitrary or in bad faith. The court also found that a union had an obligation to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." 386 U.S. at 177, 87 S.Ct. at 910. That standard has been interpreted to encompass a three-prong test by which to measure a union's behavior during its representation of the membership. Actions found to be hostile, discriminatory or arbitrary are likely to constitute a violation of § 8(b)(1)(A). *Ruzicka v. General Motors Corporation,* 523 F.2d 306, 309 (6th Cir. 1975); *Griffin v. International Union of United Automobile Makers,* 469 F.2d 181, 183 (4th Cir. 1974).

Quoting *Griffin,* the Sixth Circuit in *Ruzicka* accepted the three-prong test at page 309–10:

A union must conform its behavior to each of these three separate standards. First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action.

In this proceeding the General Counsel attempted to prove that the representatives of Local 860 made an express agreement with Emporium as to the elimination of the clerical unit—an agreement motivated by sex discrimination. The law judge discarded the theory that the parties made an express agreement and that any agreement was based on discrimination against women. The evidence lending support to a finding of sex discrimination was that the Union agents referred to the clericals as "broads." The law judge found this evidence to be fragile and inadequate.

He did find several factors indicating that Mark O'Reilly, a Union representative, had made an implied agreement with Emporium. He did not find, however, the implied agreement to be determinative of the issue of the Union's unfair labor practice. To the contrary, he found "Respondent's [Union's] failure to advise employees of dangers well-known to Respondent that their insistence was creating, which resulted in the loss of jobs, was a violation of section 8(b)(1)(A). . . ." J.A. at 16–17. In its affirmance, the Board noted its decision was based on the law judge's finding "that Respondent failed to represent every employee in the unit fairly, impartially, and in good faith by persisting in demanding a wage increase it knew would result in their termination." J.A. at 22, n. 2. It is clear that the Board's determination of a § 8(b)(1)(A) violation was based on the Union's failure to inform the clericals of the threats and not, as petitioner Union now contends, on the theory that there exists an agreement between the Union and Emporium. Substantial evidence in the record supports the Board's determination.

Two of the clerical employees testified at the administrative hearing that the Union never discussed with or presented to their unit the possibility of job layoffs; the law judge recognized and credited their testimony. There was also a stipulation that five other witnesses could corroborate that testimony. J.A. at 13. Finally, the law judge found that no Union agent notified the

clericals of the representations made by the employer as to the elimination of the clericals' jobs during the negotiations or at any time thereafter.

Local 860 had at least two opportunities to inform and advise the clericals of management's statements during the negotiations. While the negotiations were continuing, O'Reilly and Robert Paterson, another Union representative, met with the warehousemen and clericals to explain that Emporium was willing to agree to the demands for an increase in wages for the warehousemen. O'Reilly informed the workers that they would continue to push for the wage increase for the clericals, an issue which had not been resolved. At another meeting shortly thereafter, the two discussed the terms of the new agreement and told the clericals they would receive a 70-cent per hour wage increase, but that 35 cents of the increase would be "red circled", meaning that it would not be actually reflected in the contract. The employees voted to approve the contract. The Union representatives neglected to mention the possibility of the layoffs to the clerical employees at either meeting.

When the Union learned the layoffs were to be effected in late August, 1976, O'Reilly complained about the timing and asked if the action could be delayed until after Christmas. The employer's negotiator reminded him that the Union had advance warning of Emporium's plan and that they offered no objection. At O'Reilly's request, the layoffs were postponed until October. After the layoffs on October 15th, the clerical employees asked O'Reilly if the Union knew of the plan. He replied in the negative; he added there was some talk of elimination of the unit by Emporium's representatives but that such threats were made in all negotiations. The findings were not controverted. The Union representatives did attempt to justify their actions by pointing out that such tactics were commonplace and that the Union had no responsibility to inform the clericals of all potential threats. The law judge rejected this defense as did the Board.

In some cases, courts have found that a union's acts need not be intentional or based on hostile motives to constitute a breach of its duty. E. g., *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891 (4th Cir. 1980); *Robesky v. Quantas Airways*, 573 F.2d 1082, 1090 (9th Cir. 1978). In *N. L. R. B. v. American Postal Workers Union, etc.*, 618 F.2d 1249, 1255 (8th Cir. 1980), the court emphasized:

> if a union representative makes no effort to communicate with the persons directly affected by its actions and takes action without investigation or adequate notice and opportunity to be heard, these acts and omissions may constitute a breach of the duty of fair representation.

There, a union's failure to contact an employee before it revoked its assent to her request for a temporary shift change was found to be arbitrary conduct although the union intended no harm. As the Ninth Circuit stated, "[a]cts of omission by union officials not intended to harm members may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *Robesky v. Quantas Airways*, 573 F.2d at 1090.

■ Under the facts and circumstances presented in this proceeding, we find that the Union had a duty to inform its membership of management's position so that they, in turn, could make an informed reassessment of their wage demand. The Union's failure to apprise the clericals of the ultimate danger and risk of job loss created by their wage demand was clearly an arbitrary action and constituted a breach of duty. The Board's finding of a violation of the Act should not be disturbed.

■ Finally, the petitioner Union's contention that the Board exceeded its remedial authority in ordering the Union to make the clerical employees whole for their loss of wages has little, if any, merit. The Board is vested with broad remedial powers and our review is limited. *International Union of Electrical, Radio & Machine Workers AFL–CIO–CLC v. N. L. R. B.*, 604 F.2d 689, 697 (D.C.Cir.1979). A remedy

may be overturned "only if the relief ordered 'is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.'" *Id., quoting N. L. R. B. v. J. H. Rutter-Rex Manufacturing Co.,* 396 U.S. 258, 263, 90 S.Ct. 417, 420, 24 L.Ed.2d 405 (1969). The Board-imposed remedy does not fit within this category. It is not novel that a Union be required to reimburse an employee for backpay when its action resulted in the loss of the employee's job. *See N. L. R. B. v. Laborers International Union of North America,* 226 N.L.R.B. 1315, enf'd, 567 F.2d 833 (8th Cir. 1977); *Laborers and Hod Carriers Local No. 341 v. N. L. R. B.,* 223 N.L.R.B. 917, 920 (1976), enf'd, 564 F.2d 834, 840 (9th Cir. 1977). An award of backpay is within the authority of the Board and in keeping with the policies of the Act. *N. L. R. B. v. International Association of Bridge, Structural & Ornamental Iron Workers Local 433,* 600 F.2d 770, 777 (9th Cir. 1979), cert. denied, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980).

We affirm in all respects the decision of the Board and find no legal or compelling reason to modify the relief granted.

*It is so ordered.*