SHORES, Justice.
This appeal involves only the question of the proper allocation of a consent condemnation award of $400,000 between the owners of the condemned property and the lessee thereof, Shell Oil Company. The property is a 40,000 square foot lot on the northwest corner of 8th Avenue North and 22nd Street in the City of Birmingham on which was situated a Shell Oil service station and a rental parking lot. After holding a hearing on the allocation petition, the trial court allocated the $400,000, $366,522 to the lessors and $33,478 to the lessee. The lessee appealed. We affirm.
At the time of taking, Shell’s lease (including four renewal options of 5 years each) had 27 years and 8 months remaining. The court’s final decree is, in part, as follows:
“The court has considered the testimony of all the witnesses and the authorities submitted by the parties.
“It seems clear that in a condemnation case such as this, the lessee is entitled to the difference between the fair and reasonable market value of the unexpired portion of the lease and the amount of rent which would have been due to be paid by the lessee for the unexpired portion of the lease. City of Dothan vs Wilkes, 269 Ala. 444, 114 So.2d 237 [1959].
“The court is of the opinion that the renewal options contained in the lease should be included and considered by the court in determining the lessee’s interest in the condemnation award. These renewal options, if exercised, would extend the term of the lease for a period of about twenty-seven years from the date of the condemnation taking.
“The court is further of the opinion that the lessee is not entitled to a portion of the condemnation award as compensation for improvements over and above the difference between the value of the unexpired portion of the lease and the amount of rent due to be paid by lessee for the unexpired portion of the lease, as referred to above. This, because the lessee contends that the renewal options should be included in a determination of lessee’s interest, with which position the court agrees, and in view of the fact that over a period of twenty-seven years the value of the improvements would be substantially, if not completely, depreciated.
“The court is of the opinion that the fair and reasonable annual rental value of this property, under the evidence, cannot be fixed simply by capitalizing at the rate of 10 per cent the amount of the condemnation award. The court finds and determines from all the evidence that the fair and reasonable annual rental value of this property was Twenty Thousand Dollars ($20,000.00) at the time of the condemnation taking. Under the terms of the lease the rent is Fifteen Thousand Dollars ($15,000.00) a year for the first period, Eighteen Thousand Dollars ($18,-000.00) for the first and second option *294 periods and Nineteen Thousand Two Hundred Dollars ($19,200.00) for the third and fourth option periods.
“To attempt to foresee the course of inflation over a twenty-seven year period or to predict changes in business and economic conditions during such span of years is impossible. It is, of course, impossible to know with certainty that the four options to renew this lease would have been exercised had the property not been taken by condemnation.
“The court has given due consideration to the rental value, the rents due to be paid under the lease, and the options to renew and determines and finds and orders, adjudges, and decrees that the defendants Margaret Guyton and husband, Clayton Guyton; Lenora Caldwell and husband, Joseph Caldwell; Miss Winifred Gilb, an individual; Miss Winifred Gilb, Executrix of the Estate of Clara O’Neill, are entitled to Three Hundred Sixty-Six Thousand Five Hundred Twenty-Two Dollars ($366,522.00) of the condemnation award, and that the defendant, Shell Oil Company, is entitled to Thirty-Three Thousand Four Hundred Seventy-Eight Dollars ($33,478.00) of the condemnation award.

The trial court correctly followed the rule in cases such as this as set out in City of Dothan v. Wilkes, infra, cited in its judgment and reiterated as follows in Gamble v. State, 289 Ala. 131, 136, 137, 266 So.2d 286, 291 (1972):
“The only proper measure of the amount of compensation to which a lessee is entitled for the condemnation and taking of the unexpired portion of his leasehold interest in real estate owned by another is the difference between the fair and reasonable market value of the unexpired portion of the lease and the amount of rent which would have been due to be paid by the lessee for the unexpired portion of the lease, all to be considered as of the time of the taking of the leasehold interest. City of Dothan v. Wilkes, 269 Ala. 444, 114 So.2d 237 [1959] (Charge No. 1), [4, 5] and authorities there cited.”
Shell contends that, in fixing the amount to be allocated to the lessee, the trial court must accept a percentage of the total value of the property and, for that purpose, is bound by the fair market value of the property as fixed in the condemnation proceedings.
Shell’s argument is that, because the experts agreed that a fair rent for commercial property is 10% of the value per year, the value of its lease for the unexpired term was $40,000 per year (i. e., 10% of $400,000 as fixed by the condemnation award), rather than $20,000 as found by the trial court.
It is true, as Shell points out, that the trial court, in arriving at the fair market value of the unexpired portion of the lease, accepted Shell’s argument that this amount could be determined by calculating 10% of the total value of the property, but rejected its contention that the fair market value of the property for this purpose was the amount of its condemnation award. The trial court arrived at the $20,000 per annum figure by taking 10% of $200,000, not $400,-000. While, at first glance, it appears that the trial court was not justified in disregarding the amount of the condemnation award in calculating the value of the unexpired lease term, this method produced a figure of $20,000 per year.
We agree with Shell that where all of the parties agree to the condemnation award as they did here, they are bound to accept that figure as the value of the property in determining the value of the unexpired lease term. They are not, however, bound to determine the fair value of the lessee’s interest by a fixed percentage of this amount. In this case, the landlords objected to this method of determining the value of the leasehold interest and offered evidence of its value notwithstanding the value of the property. Their expert testified that, in his opinion, the property would not rent for more than $20,000 per year regardless of the value of the property itself. The method urged by Shell for determining the value of the unexpired lease term is not the only method for establishing this figure.
*295 The trial court’s finding is, therefore, supported by evidence. Where it is conflicting, as the evidence is here, we are bound by the trial court’s conclusions. The result reached by the trial court is consistent with the rule announced in City of Dothan v. Wilkes, supra, and we are not persuaded that the rule should be changed. It is followed by most jurisdictions and, although it does not always produce perfect equity, this would be true of any formula adopted for allocating condemnation awards among various interests. See Nichols, Eminent Domain, Vol. 4, § 12.42[3] (3d ed. 1977); Annot., 3 A.L.R.2d 286 (1949); Polasky, The Condemnation of Leasehold Interests, 48 Va.L.Rev. 477 (1962).
Shell also argues that the trial court erred to reversal because the allocation to Shell was less than the value of the improvements placed upon the land by the lessee. By its lease, Shell had the right to remove certain improvements, viz:
“13. REMOVAL - ' SURRENDER-FORFEITURE. Any automobile service station erected on the premises, together with all pumps, machinery, compressors and other similar equipment which is devoted exclusively to the sale and service of petroleum products, tires and automobile accessories, constructed, installed or placed on the premises by Shell, or acquired by Shell at any time during the continuance of this or any previous lease or any tenancy thereafter; shall be and remain Shell’s property and Shell shall have the right to remove any or all of the same from the premises at any time during, and within sixty (60) days after any termination of, this lease or any tenancy thereafter. All other buildings, structures and improvements placed upon the leased premises by Shell during the continuance of this lease, of a kind and character normally deemed in law to become a part of the realty and without limitation, including any parking deck structures or building for the parking or storage of automobiles, shall be and remain the property of Lessor, and upon the expiration or termination of this lease shall be delivered to Lessor, natural wear and tear and damage from fire or other casualty excepted. Any holdover by Shell After any termination of this Lease shall create no more than a month-to-month tenancy at the rent and on all other applicable conditions herein provided. If forfeiture of this Lease is permitted by law for Shell’s default, Lessor shall not be entitled to declare any such forfeiture unless Lessor has given Shell notice of such default and Shell has failed to remedy same within twenty (20) days after receipt of such notice.”
Shell concedes that a lessee is not entitled to compensation for diminution in value of personal property used by him on the leased premises. It contends, however, that a lessee is entitled to recover for the value of improvements taken by the condemning authority if the lessee has the right to remove the improvements. Nichols, Eminent Domain, Vol. 4, § 13.121[1], states the rule as follows:
“. . . The tenant is generally not entitled to recover the value of the buildings or fixtures as a separate item in addition to the value of his leasehold interest. Moreover, the tenant is not entitled to the diminution in value of such fixtures as are removed by him [citing City of Dothan v. Wilkes], nor the cost of their removal. The measure of damages is the increased market value of the leasehold interest by reason of the buildings and fixtures. . . . Hence, the structural value of the buildings and fixtures may be a fair test of what they add to the market value of the leasehold, if they are well adapted to the best use of the property. But in such case, the lease must be of such duration that it will outlast the fixtures, or must contain a covenant of perpetual renewal at the option of the tenant.”
Even if the lessee has the right to remove improvements, the general rule seems to be that he is not entitled to the value of the improvements as a separate item of damages, but they may be considered in determining the value of the leasehold interest. 27 Am.Jur.2d, Eminent Domain, § 292.
*296 The trial court appears to have so treated the improvements. It agreed that the lessee was entitled to have the option periods considered in determining the value of its interest and found that at the end of the leasehold estate, including the option periods, the improvements would have no value. This is a fact issue; therefore, we are not free to substitute our judgment for that of the trial court.
The judgment appealed from is affirmed.
AFFIRMED.
BLOODWORTH, FAULKNER, JONES, ALMON, EMBRY and BEATTY, JJ., concur.
TORBERT, C. J., and MADDOX, J., dissent.