HORNSBY, Chief Justice.
This appeal involves an award of compensation made in a condemnation proceeding. The condemnation itself is unchallenged, but the appellants invite our attention to five issues concerning the amount of compensation awarded. We address only one issue, and set forth only those facts necessary to support our judgment.
In 1963, the State initiated condemnation proceedings in connection with the construction of Interstate Highway 65. The land to be taken was owned by appellant U.S. Pipe and Foundry Company (“U.S. Pipe”); U.S. Pipe, at a time prior to the initiation of the condemnation proceedings, had leased the land to appellant Drummond Coal Company (“Drummond”), which used the land for surface mining of coal. Pursuant to the terms of the lease, Drummond paid to U.S. Pipe a royalty fee of 10% of the sale price for each ton of coal mined on the property. After a hearing and an award in probate court, the State appealed to the circuit court and amended its condemnation application. At the circuit court, Drummond was not allowed to present testimony or other evidence to the jury concerning the market value of its interest in the property. The jury awarded $300,000.00 in compensation, and the court entered judgment accordingly. From that judgment, U.S. Pipe and Drummond appeal.
Condemnation proceedings involve two phases. First, the land condemned is valued and an amount of compensation is set. Second, during the apportionment phase, the amount of compensation awarded is divided among those having an interest in the land condemned. In the present case, to put it colloquially, Drummond argues that by refusing its evidence in the condemnation hearing of the market value of the leasehold, the trial court failed to create a pie of sufficient size to be sliced justly in the apportionment phase. Stated another way, Drummond argues[1] that it could not be adequately compensated in the apportionment phase because the award set in the compensation hearing does not represent the values of all interests involved. We agree with Drummond, and reverse the judgment of the trial court.
At the outset of our analysis, we note that this is a fact-specific case. This is not a case wherein a condemnee is seeking compensation for a loss of business profits due to the taking of land upon which the *432 business is run; in that kind of case, we have held that the lost business profits are properly disallowed as being too remote from the market value of the real property. E.g., Kayo Oil Co. v. State, 340 So.2d 756 (Ala.1976). Rather, this case involves a condemnee (Drummond) seeking just compensation for a leasehold interest the value of which is directly and intimately associated with the land itself. The argument is stated succinctly by Drummond:
“Drummond’s mining operation was not a factory or other business operated in a building on the property.... It is not a ‘business’ that can be moved to and reestablished in a different location; Drum-mond has forever lost its leasehold interest in the coal on the subject property and is forever precluded from extracting and marketing those coal reserves. The value associated with Drummond’s right to extract the coal has been destroyed forever, and Drummond has been precluded from recovering that value by the trial court’s exclusion of all evidence concerning the value of the leasehold interest.”
Reply Brief of Appellant at 6.
Generally speaking, the measure of damages for a leasehold interest taken under eminent domain is the fair market value of the lease. In Alabama, two methods of determining fair market value have been approved.
First, fair market value, i.e., the measure of a lessee’s damages for a leasehold taken under eminent domain, may be the economic rent (or fair rental value of the leasehold) less the rent reserved under the terms of the lease. E.g., Harco Drug, Inc. v. Notsla, Inc., 382 So.2d 1 (Ala.1980); see Annotation, Eminent Domain: Measure and Elements of Lessee’s Compensation for Condemnor’s Taking or Damaging of Leasehold, 17 A.L.R.4th 337, 356 (1982). Under this approach, the value of the leasehold interest is the difference between the fair rental value of the leased premises for the unexpired term of the lease, and the rent reserved in the lease.
Second, fair market value may be assessed as the difference between the reasonable market value of the unexpired portion of the lease, and the amount of rent that would have been due and paid by the lessee for the unexpired term of the lease. E.g., Shell Oil Co. v. Guyton, 364 So.2d 292 (Ala.1978). Whether there is any substantive difference between this method and the one first described is not entirely clear. See Annotation, supra, 17 A.L.R.4th at 359 n. 38.
One author has pointed out:
“The determination of the lessee’s interest is further complicated where [as in the case at bar] the rent is determined in whole ... by the lessee’s receipts. The usual lease of this type is one in which the rental is fixed as a percentage of the lessee’s gross sales. The decided cases do not appear to have established any rule or formula for determining the award in such cases. It would seem that the principles discussed above are equally applicable to percentage leases. Thus, in percentage leases, where the tenant is paying less than the equivalent of the rental value, he has a compensable interest. Where the tenant is paying the maximum rental, his interest in the lease would amount to nothing and the entire award would go to the lessor ... unless, of course, the lessee has placed buildings or other improvements on the leased premises.... It would seem that if the rental in a given lease is based upon a percentage of gross sales which exceeds the percentage usually found in comparable leases in the same type of business, the lessee would have no compensable interest. Margins of profit usually dictate the percentage of gross sales which may be paid as rent in each type of business, and a lease which provides for [a] percentage of gross sales which is higher than that usually provided in similar leases would seem to have little, if any, value.”
Kizer, Valuation of Leasehold Estates in Eminent Domain, 67 W.Va.L.Rev. 101, 110 (1965).
Courts have recognized the harshness of that doctrine, however, and have created a third method, perhaps not yet *433 expressly articulated in Alabama, of assessing the value of leasehold interests: actual or intrinsic value of the leasehold. Fair and just valuation of all of the interests at stake in eminent domain proceedings requires that this method be recognized.
We hold that, where one has a leasehold interest in condemned land and that interest involves an enterprise or business directly or intimately connected with that particular land, that lessee is entitled to present evidence at the condemnation hearing of the market value of its interest at the time of the condemnation; that value is properly considered part of the value of the condemned land. Alabama Power Co. v. Herzfeld, 216 Ala. 671, 114 So. 49 (1927), permitting evidence of the value of crops standing at the time of the condemnation, supports our conclusion, as do precedents from other jurisdictions. See Arkansas State Highway Comm’n v. Steed, 241 Ark. 950,411 S.W.2d 17 (1967) (lessees entitled to present evidence of value of crops); State ex rel. Symms v. Nelson Sand & Gravel, Inc., 93 Idaho 574, 468 P.2d 306 (1970) (lessee entitled to present evidence of value of mineral interest); Korf v. Fleming, 239 Iowa 501, 32 N.W.2d 85 (1948) (lessee entitled to present evidence of value of crops); In re Essex Coal Co., 411 Pa. 618, 192 A.2d 675 (1963) (lessee entitled to present evidence of value of coal interest); Smithrock Quarry, Inc. v. State, 60 Wash.2d 387, 374 P.2d 168 (1962) (lessee entitled to present evidence of value of mineral interest). The condemnor, of course, may counter this evidence with its own evidence of the value of such an interest. In no event, however, shall the condemnor be compelled to satisfy an award where several interests are at stake and the total values of those interests represented by the award exceed the entire value of the land as a whole. Gamble v. State, 289 Ala. 131, 266 So.2d 286 (1972).
After considering the excellent oral argument and briefs of the parties and our own independent research, we conclude that the factfinder should be allowed to consider the following factors in determining the value of a leasehold interest as that value affects the fair market value of the land:
a) The length of the unexpired term of the lease;
b) the fair market value, if any, of the unexpired term of the lease;
c) in the context of the case at bar, the quantity and quality of the remaining coal and its fair market value per unit;
d) in the context of this case, income derived by the leaseholder from the property;[2]
e) the highest and best use of the property;
f) the utility, if any, of any portion of the land in which the leaseholder has an interest, remaining after the condemnation[3]; and
g) any other actual damages sustained by the leaseholder.
We stress that a lessee is not entitled as a matter of law to recover the cost of any specific item. Rather, evidence of the above factors, reduced to present value as necessary, may be considered only to the extent that they bear upon the fair value of the leasehold interest at the time of the condemnation.
The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
JONES, SHORES, HOUSTON and KENNEDY, JJ., concur.

. Although Drummond and U.S. Pipe filed joint briefs in this appeal, the arguments made therein principally apply to Drummond’s interests,

. See State ex rel. Symms v. Nelson Sand & Gravel, Inc., supra; In re Essex Coal Co., supra; see also Harco Drug, Inc. v. Notsla, Inc., supra.

. Code 1975, § 18-1A-27 (Cum.Supp.1988).