**Mark A. CASILLAS, Plaintiff,**

v.

**FEDERAL EXPRESS CORP.,
Defendant.**

**No. 00–3170 D/V.**

United States District Court,
W.D. Tennessee,
Western Division.

May 2, 2001.

Brian O. Bowhan, Law Firm of Brian O. Bowhan, Aurora, CO, for Mark A. Casillas, plaintiffs.

Paul David Jones, Elaine K. Sanders, Federal Express Corporation, Legal Department, Memphis, TN, for Federal Express Corporation, defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; ORDER GRANTING PLAINTIFF LEAVE TO AMEND COMPLAINT.**

DONALD, District Judge.

Defendant Federal Express Corp. ("FedEx") moves to dismiss, or in the alternative, for summary judgment as to Plaintiff Mark Casillas's claims arising under the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* ("ADEA"), the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), and the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et. seq.* ("ERISA"). Plaintiff alleges that Defendant's unofficial policy of resetting to zero an employee's seniority status whenever that employee voluntarily transferred to a different division (1) violated anti-discrimination laws; (2) breached his union contract; and (3) contravened ERISA's benefit provisions. The Court has jurisdiction under 28 U.S.C. § 1331. For the

reasons herein, the Court DENIES in part and GRANTS in part Defendant's motion to dismiss.

## I. Factual and Procedural Background

Plaintiff is 45 years old and Latino. In 1989, Defendant hired Plaintiff to work in its Corporate Aviation Department, where Plaintiff shuttled senior executives on small planes. In August, 1992, Plaintiff voluntarily joined the Flight Department, a separate division, to fly cargo planes. In March 1993, Plaintiff voluntarily transferred back to Corporate Aviation. In September 1995, Plaintiff again voluntarily transferred to the Flight Department, where he remains at present.

Defendant's Employee Manual[1] provides that seniority accrues from the date a pilot is employed and continues to accrue during the entire employment period. The manual also states that a pilot who voluntarily transfers to a non-flying position will lose seniority after one year. Plaintiff alleges that Defendant maintains an unofficial policy that conflicts with the official seniority plan, because it allegedly resets seniority to zero when a pilot voluntarily transfers from one flying division to another. On June 25, 2000 Plaintiff filed his EEOC charge, alleging that Defendant took adverse action against him on the basis of his age and race. On December 11, 2000 Plaintiff filed his complaint, alleging that Defendant's unofficial seniority system discriminated against him on the basis of age and race, and violated the LMRA and ERISA.

## II. Fed. R. Civ. Proc. 12(b)(6) Standard

A party may bring a motion to dismiss for failure to state a claim under Fed. R. of Civ. Proc. 12(b)(6). This motion only tests whether a cognizable claim has been pleaded in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989).

The Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Neitzke,* 490 U.S. at 326–27, 109 S.Ct. at 1832; *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 405 (6th Cir.1998). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied.

To determine whether a motion to dismiss should be granted, the court must first examine the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103; *Westlake,* 537 F.2d at 858. The complaint need not specify all the particularities of the claim, *id.,* and if the complaint is merely vague or ambiguous, a

---

1. Defendant's employment manual was controlling during 1992 and 1995, the dates that Plaintiff voluntarily transferred to different flying positions. In 1998, the pilots unionized, and a collective bargaining agreement, utilizing the same language, subsumed the manual.

motion under Fed.R.Civ.P. 12(e) for a more definite statement is the proper avenue rather than under Fed.R.Civ.P. 12(b)(6). 5A Wright, Miller & Kane, Federal Practice & Procedure § 1356 (West 1990). The plaintiff, however, has an obligation to allege the essential material facts of the case. *Scheid,* 859 F.2d at 436–37. All facts taken as true in the complaint must be "well-pleaded." *Lewis,* 135 F.3d at 405. "Well-pleaded facts" refers to those facts which are legally capable of being proved. 71 C.J.S. Pleading § 426 (1951).

In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983). Indeed, the facts as alleged by the plaintiff cannot be disbelieved by the court. *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1832; *Murphy v. Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir.1997). Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1039–40 (6th Cir.1991). However, legal conclusions or unwarranted factual inferences should not be accepted as true. *Lewis,* 135 F.3d at 405–06.

## III. Analysis

### A. Plaintiff's Title VII and the ADEA claims

#### 1. *Failure to exhaust administrative claims*

Defendant asserts that Plaintiff does not restrict allegations in his complaint to those in his EEOC charge. Defendant accordingly contends that Plaintiff has failed to exhaust his administrative remedies. In his EEOC charge and his complaint, Plaintiff alleges that Defendant has discriminated against him on the basis of his age and race, but alleges different factual predicates to support these claims. In his EEOC charge, Plaintiff alleges that Defendant required him to sign an agreement that confined Plaintiff to a department for a longer period of time than a younger White employee who had less seniority with the company. In his complaint, however, Plaintiff alleges that Defendant maintains an unofficial seniority system that discriminates against him on the basis of his age and race.

 A plaintiff must first file a charge with the EEOC before pursuing any grievance with the courts, whether the claim is brought under Title VII or the ADEA. 42 U.S.C. § 2000e–5(f)(1); *Davis v. Sodexho, Cumberland College Cafeteria,* 157 F.3d 460, 463 (6th. Cir.1998). This procedure notifies potential defendants of the nature of the plaintiff's claims and provides them with the opportunity to settle claims before the EEOC rather than litigate them. *Davis,* 157 F.3d at 463. Conciliation serves an important purpose and is not to be easily circumvented. *Vinson v. Ford Motor Co.,* 806 F.2d 686, 688 (6th Cir.1986). Accordingly, if the plaintiff's complaint is not reasonably related to the EEOC charge, the court lacks jurisdiction to hear the matter. *Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246, 254 (6th Cir.1998); *Davis,* 157 F.3d at 463.

 Recognizing that a layperson frequently fills out the EEOC charge, however, the Sixth Circuit permits the plaintiff to allege claims in the complaint that could reasonably be expected to grow out of the EEOC charge. *Davis,* 157 F.3d at 463; *EEOC v. McCall Printing Corp.,* 633 F.2d 1232, 1235 (6th Cir.1980). Courts are apt to find that the complaint relates to the EEOC charge where the plaintiff had merely failed to recognize a procedural technicality, distinguish between seemingly identical legal theories, or articulate the exact wording required in a judicial plead-

ing. *McCall*, 633 F.2d at 1235; *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir.1992); *Davis*, 157 F.3d at 463. In contrast, the plaintiff is expected to specify each event which he or she feels was a result of unlawful discrimination. *Vinson*, 806 F.2d at 688.

■ The plaintiff has two methods to show that his or her complaint could reasonably be expected to grow out of the EEOC charge. First, the plaintiff can show that the EEOC investigation of one charge revealed evidence of a different type of discrimination against the plaintiff. *Davis*, 157 F.3d at 463. In the present case, however, Plaintiff fails to show that the EEOC's investigation revealed evidence that Defendant allegedly maintained a discriminatory seniority system.

Second, where the alleged facts would prompt the EEOC to investigate an uncharged claim, the plaintiff may bring suit on that claim. *Davis*, 157 F.3d at 463; *Farmer v. ARA Services Inc.*, 660 F.2d 1096, 1105 (6th Cir.1981). Courts can expect the EEOC to identify and investigate legal issues that flow from the plaintiff's factual allegations. *McCall*, 633 F.2d at 1236. For example, in *Haithcock*, the plaintiff failed to include legal language in his EEOC charge, such as the words "pattern and practice," that would trigger a continuing violation claim. The Sixth Circuit, however, found that the plaintiff's description of numerous and related discriminatory events over a period of time adequately notified the EEOC and the defendant that the plaintiff had pled a continuing violation claim. *Haithcock*, 958 F.2d 671, 676.

Similarly in *Farmer*, several female plaintiffs working as attendants filed charges with the EEOC alleging that their union had failed to attempt to secure jobs as "servicemen," a position providing a higher wage and demanding fewer work hours. Although their EEOC charge did not specifically allege that wage scales in the collective bargaining agreement were discriminatory, the plaintiffs were permitted to include such claims in their lawsuit. The court found that the EEOC charge regarding job classification and pay was closely related to the equal pay claim filed in plaintiffs' lawsuit. Like in *Haithcock*, the plaintiffs in *Farmer* neglected to identify all their legal claims, but provided sufficient facts in their EEOC charge to apprise the EEOC of additional, unpled causes of action.

■ *Farmer*, however, should not be misinterpreted to automatically mean that claims sharing the same subject matter (i.e., age discrimination), but different factual predicates, are "reasonably related." Because two distinct events share the same subject matter does not necessarily mean that the EEOC's investigation of one event will lead to the other. *Vinson*, 806 F.2d at 688. In *Vinson*, the plaintiff alleged in his EEOC charge that he had been demoted on the basis of his age in 1980. The plaintiff failed to include that he had also been demoted on the same basis in 1979. The Court held that the investigation of the 1980 incident did not reasonably entail discovery of the 1979 incident. *Id.* at 688. The key difference between *Vinson* and *Farmer* is that, unlike the plaintiffs in *Farmer*, the plaintiff in *Vinson* failed to allege the necessary facts in his EEOC charge to support claims lodged in his complaint.

■ The Court acknowledges that Plaintiff filled out the EEOC charge as a layperson, but also recognizes that Plaintiff's layperson status has little impact on his ability to articulate the reasons why he thinks Defendant acted unlawfully. In his EEOC charge, Plaintiff did not fail to recognize a procedural technicality or distinguish between seemingly identical legal theories. Instead, Plaintiff failed to plead

the factual predicate (that Defendant allegedly maintained a discriminatory seniority system) underlying his harm (that he was discriminated against on the basis of age and race).

*Haithcock, Farmer,* and *Vinson* are all distinguishable. In *Haithcock* and *Farmer,* the claimants pled all the necessary facts but neglected to initially plead all their legal claims. In the present case, Plaintiff neglected to plead the necessary facts, but like the claimant in *Vinson,* initially pled all his legal claims. In *Vinson,* however, the additional factual predicate in the claimant's complaint was completely unrelated to the factual predicate alleged in his EEOC charge. In the instant case, however, there is a close relationship between facts that Plaintiff pled in the EEOC charge and the facts he pled for the first time in his complaint.

The Court finds that the principle behind requiring claimants to exhaust their administrative remedies is to help ensure that the EEOC has the opportunity to facilitate conciliation between the parties and avoid litigation. The two methods that a plaintiff may use to show that his or her complaint could reasonably be expected to grow out of the EEOC charge flow from this principle. If from the EEOC charge the EEOC did or reasonably could have investigated or discussed all issues eventually pleaded in the plaintiff's complaint, the principle has been satisfied. In the present case, although Plaintiff's factual description of the actual harm he suffered provides an incomplete picture of his discrimination claim, a few simple questions from an EEOC representative would have clarified Plaintiff's position. The EEOC representative merely could have asked Plaintiff why Defendant placed him in a more restrictive position than a younger, White employee with less company-wide seniority. Plaintiff would have responded that such harm was a result of an unofficial policy that watered down his seniority and discriminated against him on the basis of his race and age.

The Court finds that, because the facts, necessary to Plaintiff's claim but not explicitly stated in the EEOC charge, are so integrally related to those facts actually alleged in the EEOC charge, Plaintiff's EEOC charge sufficiently forms the basis for his complaint. A few simple questions from the EEOC would have inevitably led to the facts that have become central to Plaintiff's complaint. Accordingly, the Court finds that Plaintiff has not failed to exhaust his administrative remedies.

### 2. *Whether Plaintiff's claims are time barred*

Defendant asserts that Plaintiff did not file his claim in a timely fashion, and his claims are therefore barred. Defendant contends that the limitation period for filing a charge alleging discrimination in regard to a seniority system commences, for a facially neutral seniority system, at the time the system is adopted. (Defendant's Motion to Dismiss, p. 8) (citing *Lorance v. AT & T Technologies,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989)). Because Plaintiff's complaint alleges the system has been in place since at least the time of his first transfer in August, 1992, Defendant argues that the EEOC charge, filed nearly eight years later, is untimely.

Plaintiff first responds by arguing that no seniority system is at issue, but rather a sustained effort on Defendant's part to bypass its written seniority system. The unofficial policy, however, ensures preferences are meted out on the basis of one's seniority within a division, not within the company. Preferential treatment is therefore dispensed on the basis of some measure of time served in employment. *California Brewers Ass'n v. Bryant,* 444 U.S. 598, 605–6, 100 S.Ct. 814, 819, 63

L.Ed.2d 55 (1980). As such, the policy focuses upon the length of one's employment, and is therefore considered a seniority rule. *Id.* at 609–16, 100 S.Ct. at 821. The Court therefore rejects Plaintiff's first argument.

Plaintiff next contends that, though the unwritten seniority system is facially neutral, it is perpetuated by a discriminatory purpose, and *Lorance* does not therefore apply. Plaintiff's second argument has merit. The *Lorance* decision was partially superceded by statute. *Brunet v. City of Columbus,* 1 F.3d 390, 402 (6th Cir.1993). Two years after the Court decided *Lorance,* Congress amended Title VII to redefine when an unlawful employment practice occurs in respect to seniority systems. 42 U.S.C. § 2000e–5(e)(2) (1991 amendment). According to § 2000e–5(e)(2), in respect to a facially neutral seniority system that has been adopted for an intentionally discriminatory purpose, an unlawful employment practice occurs when the individual becomes subject to the seniority system, or is injured by its application. *Id.* Plaintiff alleges that Defendant's unofficial seniority system is maintained for an intentionally discriminatory purpose. Therefore, Plaintiff's Title VII claim falls outside of *Lorance's* restrictions.

▉ Defendant, however, contends that *Lorance* was only superceded by Title VII, and not the ADEA. Defendant therefore asserts that Plaintiff's ADEA claim remains untimely, citing *Thompson v. Prudential Ins. Co. of America,* 795 F.Supp. 1337,1347–48 (D.N.J.1992). The court in Thompson held that *Lorance* still controlled the limitations period for ADEA claims. *Id.* Though *Lorance* applied to a Title VII claim, the provision at issue, 42 U.S.C. § 2000e–2(h), is analogous to the ADEA's provision relating to seniority systems, 29 U.S.C. § 623(f)(2). Both provisions provide that seniority systems are not unlawful unless they are adopted with an intent to discriminate on the basis of an impermissible characteristic.

In *Thompson,* the court reasoned that, because Congress did not also amend the ADEA in 1991, *Lorance* still applied to ADEA claims. In amending Title VII, the *Thompson* court found that Congress only sought to clarify timeliness issues regarding bringing suit against the maintenance of seniority systems that discriminated on the basis of race, color, religion, sex, or national origin. P.L. 102–166, § 107. The court reasoned that Congress notably made no mention of age.

This Court disagrees with the *Thompson* court's decision for three reasons. First, Congress made no mention of age in P.L. 102–166, § 107 because Title VII does not apply to discrimination based on age.

Second, Congress did not clarify the ADEA with respect to *Lorance,* because *Lorance* only applied to Title VII. The Court acknowledges that the Title VII provision at issue in *Lorance* had an ADEA counterpart, and that ADEA provisions generally receive an identical interpretation to corresponding provisions of Title VII. *Lilley v. BTM Corp.,* 958 F.2d 746, 750 n. 2 (6th Cir.1992). However, because important differences exist between the type of discrimination actionable under Title VII and that under the ADEA, the procedural framework of one statute is not automatically applicable to the other. *Jackson v. Richards Medical Co.,* 961 F.2d 575, 587 (6th Cir.1992). For example, under the ADEA, a plaintiff must be over forty years of age to trigger the statute's protections. It would be contrary to the ADEA's remedial framework to preclude a plaintiff from challenging a seniority system that discriminates on the basis of age merely because the system was adopted before the employee was forty years old.

Finally, the Court finds that, because the ADEA provisions were generally de-

rived from Title VII, when Congress clarified what it originally meant in § 2000e–2(h), this clarification also applied to its ADEA counterpart, 29 U.S.C. § 623(f)(2). *EEOC v. LuckMarr Plastics, Inc.*, No. 88–2192, 1989 WL 102320, *2 (6th Cir. Sept., 7, 1989) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985)). Congress' clarification of Title VII's procedural requirements that relate to a facially neutral seniority system sits comfortably with the ADEA's substantive requirements. Therefore, Plaintiff's ADEA claim also falls outside of *Lorance's* restrictions.

■ Under Title VII and the ADEA, then, Plaintiff may bring a claim when he was injured by the seniority system's application. § 2000e–5(e)(2);. 29 U.S.C. § 623(f)(2). In "deferral states," a plaintiff has 300 days from the alleged unlawful employment practice to file a charge with the EEOC. *Jackson v. Richards Medical Co.*, 961 F.2d 575, 579 (6th Cir.1992). A "deferral state" prohibits discrimination in employment based on age or race, and authorizes a state authority to grant relief. *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 194 (6th Cir.1995). Tennessee is a deferral state for both ADEA and Title VII claims. Tenn.Code Ann. § 4–21–101. Plaintiff alleges he was injured by the seniority system's application on June 15, 2000. Ten days later, he filed his EEOC charge. Plaintiff's age and race discrimination claims come well within the 300 day allotment. The Court also finds that Plaintiff's claim is in the nature of a continuing violation, because he is alleging that Defendant maintained a discriminatory system over time. *Morelock v. NCR Corp.*, 586 F.2d 1096, 1103 (6th Cir.1978).

3. *Whether Plaintiff's claims are cognizable*

■ Title VII and the ADEA are designed not only to bar overt employment discrimination, but also practices that, though fair in form, are discriminatory in operation. *Pullman–Standard v. Swint*, 456 U.S. 273, 276, 102 S.Ct. 1781, 1784, 72 L.Ed.2d 66 (1982); *Allen v. Diebold, Inc.*, 33 F.3d 674, 676 (6th Cir.1994). Both Title VII and ADEA permit employers to maintain seniority systems that provide for different standards of compensation, terms, conditions or privileges, as long as the system is bona fide. 42 U.S .C. § 2000e–2(h); 29 U.S.C. § 623(f)(2)(A). A seniority system is bona fide if it was not adopted or is not operated with discriminatory intent. To determine whether a seniority system is bona fide, the fact-finder must consider the "totality of the circumstances" surrounding the development and maintenance of a seniority system. *Swint*, at 279, 102 S.Ct. at 1785; *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 352 (5th Cir.1977). To guide their analysis, courts will commonly consider (1) whether the seniority system operates to discourage all employees equally from transferring between seniority units; (2) whether the seniority units are in the same or separate bargaining units; (3) whether the seniority system had its genesis in racial discrimination; and (4) whether the system was negotiated and has been maintained free from illegal purpose. *Taylor v. Mueller Co.*, 660 F.2d 1116, 1121 (6th Cir. 1981). These factors are not exhaustive. *Swint*, 456 U.S. at 279, n. 8, 102 S.Ct. at 1785.

■ It is not Defendant's burden to show the seniority system is bona fide, as the applicable Title VII and ADEA provisions are not affirmative defenses. *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 761, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Lorance*, 490 U.S. at 908–09, 109 S.Ct. at 2267. Instead, the ultimate burden of proof falls on the plaintiff to prove that a seniority system is not bona fide.

The first step, however, is for the plaintiff to show evidence of discriminatory intent. Such proof can be established by direct evidence or may be inferred from a prima facie showing of discrimination. *Huguley v. General Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir.1995). Where the plaintiff-employee offers no direct evidence of unlawful discriminatory intent, the order and allocation of burdens of proof are as established by the evidentiary framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under the *McDonnell Douglas* burden shifting framework, the plaintiff must first prove a prima facie case of discrimination by a preponderance of the evidence. *Wilson v. Stroh Companies, Inc.*, 952 F.2d 942, 945 (6th Cir.1992).

If the plaintiff succeeds, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. In cases involving a seniority system, the employer must proffer evidence showing that its seniority system is bona fide to rebut the plaintiff's prima facie showing. *EEOC v. Ball Corp.*, 661 F.2d 531, 539 (6th Cir.1981). The plaintiff may still prevail, however, if evidence has been proffered that tends to disprove the reasons offered by the defendant. *Lorance*, 490 U.S. at 908, 109 S.Ct. at 2267 (citing *California Brewers Ass'n v. Bryant*, 444 U.S. 598, 610–11, 100 S.Ct. 814, 822, 63 L.Ed.2d 55 (1980)); *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 347 (6th Cir.1997). Even if the plaintiff proves that the employer's proffered reason is pretext, he still bears the ultimate burden of proving that a discriminatory intent motivated the defendant's actions.

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

To meet his first burden and establish a prima facie case of discrimination, the plaintiff must prove that (1) he is a member of a protected group, (2) that he was subject to an adverse employment action (3) that he was qualified for the position sought or held, and (4) that a person not of the protected class replaced, or was selected over, the plaintiff. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir.1994). The fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably. *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

Plaintiff alleges that, though facially neutral, the universally applied unwritten seniority system is maintained with a discriminatory purpose. Plaintiff asserts this discriminatory purpose is evident because (1) he is over forty years of age and is Latino; (2) he was given a less desirable position than an employee who had been with the company for a shorter time; (3) he was qualified for the desired position; and (4) that a younger, White employee was selected over him. Therefore, accepting Plaintiff's allegations as true, he has satisfied his prima facie burden of showing that the policy was discriminatory on the basis of age and race.

Defendant does not proffer any evidence that its seniority system is bona fide. Doing so, at this initial pleading stage, would be premature. The Court, accepting as true all factual allegations in the complaint and construing them in the light most favorable to the plaintiff, finds that Plaintiff has pleaded the necessary facts to survive Defendant's motion to dismiss. Though

Plaintiff has the ultimate burden of proof, and his current allegations are not sufficient to carry his entire discrimination claim, he has proffered facts sufficient to allow him the opportunity to conduct discovery and further explore his claim. Defendant's motion for summary judgment is premature because the discovery deadline is September 3, 2001. Accordingly, the Court DENIES Defendant's motion to dismiss his Title VII and ADEA claims.

### B. Plaintiff's LMRA claim

Plaintiff has voluntarily dismissed his claim under the Labor Management Relations Act, 29 U.S.C. § 151, *et seq.*

### C. Plaintiff's ERISA claim

Under ERISA, a plan participant may bring an action to enforce his rights under the terms of the plan, or may enjoin any practice which violates an ERISA provision. 29 U.S.C. §§ 1132(a)(1)(B), (a)(3). Plaintiff has not argued that Defendant's unwritten seniority plan is inconsistent with its pension plan. Instead, Plaintiff seeks to enjoin Defendant from enforcing the seniority plan, alleging that it is inconsistent with various ERISA requirements.

▬ Plaintiff first alleges in his complaint that Defendant's unwritten seniority plan resets Plaintiff's years *with the company* to zero. Plaintiff alleges that this policy violates 29 U.S.C. § 1052(b)(2), which regulates whether or not an employer must acknowledge an employee's prior service after a break in employment. This provision requires an employer to preserve an employee's seniority if the employee leaves the company for less than a year. Plaintiff argues that, because transferring to a different division allegedly reset his seniority in the division and the company to zero, he is in effect treated as if he had left his employment for more than a year and returned. Section 1052(b)(2) does not

apply, however, because Plaintiff never left his employer.

▬ Plaintiff also argues that the policy violates 29 U.S.C. § 1052(b)(1), which provides that the employee's period of service with the company should include the total number of years the employee worked for the company. Defendant responds that Plaintiff's claim is untenable because Plaintiff's allegations are factually unsupportable, and submits the affidavit of its Senior Manager of Employee Benefits and Retirement Planning, August C. Lauer ("Lauer"). Lauer avers that Defendant has credited Plaintiff with twelve years of service for purposes of the pension plan, and that, consistent with § 1052(b)(1), Defendant has used Plaintiff's hire date to compute his pension benefits.

In reviewing a complaint under a motion to dismiss, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). Indeed, the facts as alleged by the plaintiff cannot be disbelieved by the court. *Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1832; *Murphy v. Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997). In the present case, however, Plaintiff concedes to Defendant's facts. Therefore, the Court agrees with Defendant that Plaintiff's case cannot be brought solely under 29 U.S.C. § 1052(b)(1).

Even accepting that Defendant has properly credited Plaintiff with twelve years, Plaintiff contends that Defendant's unwritten policy still violates ERISA, even if it has no impact on determining his total years of service for purposes of calculating his benefits. Plaintiff asserts that, because the unwritten policy negatively impacts Plaintiff's earning power, it reduces the amount he can contribute to his benefit

plan. He argues that the plan therefore discriminates against employees who decide to transfer. Plaintiff, however, fails to identify any authority for his position that this arrangement violates ERISA.

Plaintiff asks the Court to recognize a "hybrid" claim that would borrow from § 1052(b)(1) and § 1052(b)(2). Plaintiff argues that § 1052(b)(1) is implicated because, due to the seniority system's negative impact on Plaintiff's salary, he is forced to contribute less to his pension plan. In effect, he argues, he is not being given full credit for his service with the company. Plaintiff argues that 1052(b)(2) is implicated because the resetting of his seniority acts as a "break" in employment that reduces his total benefits. Section 1052, however, speaks to nothing more than how to calculate the *years* of an employee's service. It does not govern how the employer must operate its business. For example, § 1052(b)(1) does not require an ERISA employer to maintain a salary floor, and § 1052(b)(2) does not require an ERISA employer to hire an employee back at his or her previous wage. The Court therefore rejects Plaintiff's attempts to create a "hybrid" § 1052 claim that makes it illegal for an ERISA employer to institute a seniority system that might negatively affect certain employee's salaries.

Provisions that are somewhat analogous to Plaintiff's allegations also do not assist Plaintiff. ERISA does ensure that employees who participate in pension plans do not lose their benefits as a result of unduly restrictive forfeiture provisions. 29 U.S.C. §§ 1051–61; *Holliday v. Xerox Corp.*, 732 F.2d 548, 550 (6th Cir.1984). Defendant's seniority system, however, does not force any forfeiture of Plaintiff's benefits. Another tangentially related provision, § 1054(b)(2)(A), which regulates participation in defined contribution plans such as Plaintiff's, provides that amounts allocated to the employee's account are not be reduced based on the employee's age. Plaintiff, however, does not allege that the seniority system works to reduce the *rate* at which amounts are allocated to Plaintiff's benefit plan, a basic element of § 1054(b)(2)(A).

In sum, Plaintiff argues that, because transferring to a different division reset his seniority to zero, he (1) was unable to secure promotions; (2) was precluded from securing higher paying jobs; and (3) was therefore forced to contribute a lower monthly amount to his defined contribution plan. Plaintiff in effect argues that Defendant must provide him with a higher salary or violate ERISA. ERISA, however, does not guarantee an employee a certain salary. In fact, ERISA does not even guarantee a certain level of benefits. *Inter–Modal Rail Employees Ass'n v. Atchison, Topeka and Santa Fe Ry. Co.*, 520 U.S. 510, 515, 117 S.Ct. 1513, 1516, 137 L.Ed.2d 763 (1997) (holding that under ERISA employers are free to reduce benefits should economic conditions sour). To the extent that Plaintiff may suffer negative consequences in voluntarily transferring to another division, such decision is Plaintiff's. Defendant's unwritten policy does not violate ERISA. The Court accordingly GRANTS Defendant's motion to dismiss Plaintiff's ERISA claims.

### D. Breach of contract claim

Plaintiff claims, in his response to Defendant's motion to dismiss, that Plaintiff has a common law action for breach of contract. Plaintiff asserts that Defendant's unwritten policy breaches the terms of its employment manual. In its motion to dismiss, however, Defendant makes no mention of this common law claim. As Plaintiff himself points out, it is not entirely clear from the complaint that Plaintiff made such a claim.

The complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a). The complaint must provide the defendant with fair notice of the plaintiff's claim and the grounds upon which it rests. *Conley*, 355 U.S. at 47, 78 S.Ct. at 103; *Westlake*, 537 F.2d at 858. The complaint need not specify all the particularities of the claim, and if the complaint is merely vague or ambiguous, a motion under Fed.R.Civ.P. 12(e) for a more definite statement is the proper avenue rather than under Fed.R.Civ.P. 12(b)(6). 5A Wright, Miller & Kane, Federal Practice & Procedure § 1356 (West 1990).

Plaintiff's complaint states that this Court has jurisdiction under federal law and "pendant state law," thereby providing Defendant notice that Plaintiff has a state law cause of action. (Complaint, ¶ 3). Additionally, Plaintiff alleged that the employment manual "served as the written contract between the parties." (Complaint, ¶ 5). Plaintiff also alleged that the unwritten policy "materially affected the terms and conditions of his employment" and constituted a "breach of the initial contract between the parties." (Complaint, ¶ 13). Finally, under the heading "claims," Plaintiff stated that his seniority date was controlled by the "arbitrary date contrived by the Company after it acted arbitrarily and in breach of its written contract." (Complaint, ¶ 22). Plaintiff admits that he neglected to include the particular cause of action that he intended to plead under state law.

Plaintiff provided a jurisdictional and a factual basis for his breach of contract claim, but neglected to state its common law or statutory basis. Defendant was therefore put in the position of possibly defending against a cause of action that Plaintiff had not intended to bring, or had not thought to bring. The Court therefore treats Plaintiff's insistence that he has a breach of contract claim as a request for leave to amend the complaint. Pursuant to Fed.R.Civ.P. 15(a), the Court **GRANTS** Plaintiff leave to amend his complaint and include his breach of contract claim.

## IV. Order

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss Plaintiff's Title VII and ADEA claims. The Court, however, **GRANTS** Defendant's motion to dismiss Plaintiff's LMRA and ERISA claims. The Court also **GRANTS** Plaintiff's request for leave to amend his complaint to include a breach of contract claim.