Blossom v. Bank of NH                    CV-02-573-JD  07/16/04

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Charles N. Blossom, Jr.

        v.                              Civil No. 02-573-JD
                                        Opinion No. 2004 DNH 104
Bank of New Hampshire


                              O R D E R


    The plaintiff, Charles N. Blossom, Jr., seeks a declaratory
judgment that the anti-alienation provision of the Employee
Retirement Income Security Act ("ERISA") voids the assignment of
his annuity payments to the defendant, Bank of New Hampshire.
The bank responds that the annuity does not constitute an
employee benefit plan for ERISA purposes, or alternatively, that
Blossom received the payments under a "top hat" plan exempted
from the anti-alienation provision.  The parties have cross-moved
for summary judgment.


                             Background

    Blossom and Concord General Mutual Insurance Company entered
into a written compensation agreement on April 15, 1982.  At that
time, Blossom had worked for Concord General for nearly seventeen
years and was the president of one of its affiliates.  The
agreement recited Blossom's "efforts, abilities and
accomplishments . . . as an important member of management" and

the company's recognition that "his future services are vital to its continued growth and profits and that the loss of his services would result in substantial financial loss." The agreement also expressed Concord General's "willingness to provide post-retirement benefits and/or post-death benefits" to Blossom "in order to retain [his] services."

Specifically, the agreement entitled Blossom or, after his death, any of his designated beneficiaries, to a monthly payment of $3,888.66 from Concord General to commence after he turned sixty-five and retired and to continue for the next fifteen years. If Blossom died while younger than sixty-five and still in the company's employ, his designated beneficiaries would have received the same monthly payment from the company for the next fifteen years. The agreement also provides that Concord General

> shall be under no obligation whatever to purchase or
> maintain any contract, policy or other asset which the
> [company] may utilize to assure itself of the funds to
> provide the benefits hereunder and shall not serve in
> any way as security to [Blossom] for the [company's]
> performance under this Agreement. The rights accruing
> to [Blossom] or any designated beneficiary hereunder
> shall be solely those of an unsecured creditor to the
> [company].

The agreement also states that neither Blossom nor any designated beneficiary "shall have any right to sell, assign, transfer, or otherwise convey the right to receive any payments hereunder."

Four other key executives entered into agreements with

2

Concord General which were essentially the same as Blossom's. At that time, the company purchased a whole-life insurance policy on each of the executives, naming itself as the beneficiary. Concord General intended to use the surrender value of each policy to purchase an annuity for the insured executive at the time of his retirement. The annuity would be used to meet Concord General's obligation to make post-retirement payments under the agreements.

Blossom retired from Concord General in 1996, at the age of sixty-one. The parties amended their agreement to allow Blossom to start receiving the post-retirement payments within one month of his retirement even though he had not yet turned sixty-five. On August 27, 1996, Concord General purchased a single-premium annuity from The Northwestern Mutual Life Insurance Company.

The annuity contract provides that Northwestern will pay "the Annuitant," identified as Blossom, the sum of $3,888.66 every month for the fifteen-year period ending on August 1, 2011. If Blossom dies before then, the remaining payments will be made to "the direct beneficiary," identified as Blossom's wife. The annuity contract entitles "the Owner," identified as Concord General, to exercise "[a]ll policy rights . . . without the consent of any beneficiary." These rights include changing the beneficiary at any time except during the sixty-day period

3

following Blossom's death but do not include stopping or reducing the monthly payments or redirecting them during his lifetime.[1]

Concord General purchased a separate annuity for each of the executives who had entered into the agreements. The payments from each annuity went directly from Northwestern to the executives. Joseph Desmond, the chairman and chief executive officer of Concord General since 1991, testified in his deposition that he decided to purchase the annuities instead of paying the executives out of the company's general fund so that "they would be protected if Concord General went under." He also said that he purchased the annuities so that "Northwestern now had the obligation to pay the monthly benefit."

Blossom borrowed $375,000 from Bank of New Hampshire on September 26, 1996. The "Loan Agreement" between the parties provided that "the payment of the loan shall be made from the monthly annuity payments under [the annuity] which Blossom, as Annuitant, is contemporaneously assigning to Bank." If Blossom died before repaying the loan in full, "the Annuity benefits . . . payable under the Annuity shall be paid to Bank up to the full amount of the outstanding obligation . . . and, accordingly,

---

[1]Concord General could, however, demand a refund of the premium and a cancellation of the contract within ten days of receiving it from Northwestern.

4

Blossom shall cause his spouse . . . to execute the assignment of annuity benefits."  Upon repayment of the loan, the Bank must notify Northwestern "that the Assignment is terminated."

Blossom and his wife signed an "Assignment of Annuity Policy" through which they purported to "assign and transfer all of their rights under the Annuity including but not limited to the right to receive monthly benefits and/or lump sum payment under the Annuity to Bank of New Hampshire . . . ."  Blossom also executed a "Commercial Pledge Agreement" identifying the collateral for the loan as "an assignment of deferred compensaion [sic] plan to provide guaranteed monthly payments . . . and an assignment of pension plan."

Concord General signed an "Assignment of Annuity Proceeds as Collateral" on October 1, 1996, purporting to "assign, transfer, and set over" the annuity to the bank.  Although Concord General's right to change the beneficiary of the annuity was excluded from the assignment, the Blossoms and Concord General had agreed not to change the beneficiaries of the annuity without the bank's authorization during the pendency of the loan in a written "Beneficiary Agreement" dated September 26, 1996. Concord General also signed another document, entitled simply "Agreement," purporting to assign "all of its rights, title, and interest" in the annuity to the bank as security for its loan to

5

Blossom. Concord General executed the assignment at Blossom's request. Per the assignment, Northwestern issued subsequent payments under the annuity by joint check to Blossom and Bank of New Hampshire, although the checks were mailed to the bank.

Blossom filed for bankruptcy on June 20, 2002. At that point, he still owed Bank of New Hampshire nearly $290,000 on the loan. Blossom commenced this action after the bankruptcy court granted the bank's motion for relief from the automatic stay to cash the joint checks it held at the time and to assert sole control over future payments under the annuity.

### Standard of Review

On a motion for summary judgment, the moving party has the burden of showing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, the court must then determine whether the non-moving party has demonstrated a triable issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). In performing this analysis, the court must view the entire record in the light most favorable to the non-movant, "'indulging all reasonable inferences in that party's favor.'" Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). Still, "[o]n issues where

6

the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." Id., 950 F.2d at 822; see also Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 76 (1st Cir. 2001). Where, as here, both sides have moved for summary judgment, the court applies this analysis to each motion in turn. See Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996).

## Discussion

In his complaint, Blossom asks the court to declare "that the assignment made by Concord General and Blossom is invalid under ERISA and the terms of the plan, that benefits paid to Bank of New Hampshire must be returned to Blossom, and that Bank of New Hampshire is not entitled to receive any future payments from the annuity policy pursuant to the assignment." He requests summary judgment on the basis of either ERISA's anti-alienation provision or the terms of the compensation agreement itself.

Bank of New Hampshire seeks summary judgment on the ground that the annuity does not constitute a plan governed by ERISA. In the alternative, the bank argues that even if the annuity does qualify as an ERISA plan, it is exempt from the statutory anti-alienation provision by virtue of 29 U.S.C. § 1051(2). The bank concedes that the compensation agreement, but not the annuity,

7

constitutes an "employee benefit plan" so as to fall within the scope of ERISA generally.[2]  See 29 U.S.C. § 1002(3).  The bank also disclaims any reliance on Blossom's purported assignment of his rights in the compensation agreement.  The bank contends, however, that the anti-assignment language in the compensation contract does not apply to the annuity.

ERISA's anti-alienation provision states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."  29 U.S.C. § 1056(d)(1).  The provision erects "a broad statutory bar" against "the assignment or alienation of pension benefits."  Patterson v. Shumate, 504 U.S. 753, 760 (1992).  ERISA defines "pension plan" as

> any plan, fund, or program . . . established or
> maintained by an employer or by an employee
> organization, or by both, to the extent that by its
> express terms or as a result of surrounding
> circumstances such plan, fund, or program--
>        (i) provides retirement income to employees, or
>        (ii) results in a deferral of income by employees
> for periods extending to the termination of  covered

---

[2]In the jargon of ERISA, the term "employee benefit plan" refers to a plan which is a benefit plan, a welfare plan, or both.  29 U.S.C. § 1002(3).  ERISA's anti-alienation provision applies only to pension plans and not to welfare plans.  Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 836 (1988).  Thus, the bank's concession that the compensation contract is an "employee benefit plan" does not necessarily implicate the anti-alienation provision, regardless of whether 29 U.S.C. § 1051(2) applies.  Nevertheless, there is no dispute that the compensation contract is a pension plan, not a welfare plan, within the meaning of ERISA.  See 29 U.S.C. § 1002(2)(A).

employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A).

The Department of Labor has promulgated a regulation clarifying the statutory definition of "employee benefit plan." 29 C.F.R. § 2510.3-3(a). The regulation provides that "the term 'employee benefit plan' shall not include any plan, fund or program . . . under which no employees are participants covered under the plan, as defined in paragraph (d) of this section." Id. § 2510.3-3(b). Paragraph (d), in relevant part, states

> An individual is not a participant covered under an employee benefit plan or a beneficiary receiving benefits under an employee pension plan if--
>      (A) The entire benefit rights of the individual--
>      (1) Are fully guaranteed by an insurance company, insurance service or insurance organization . . . and are legally enforceable by the sole choice of the individual against the insurance company, insurance service or insurance organization; and
>      (2) A contract, policy or certificate describing the benefits to which the individual is entitled under the plan has been issued to the individual . . . .

Id. § 2510.3-3(d)(1)(ii). This regulation recognizes a plan's ability to "buy out" its continuing obligations to a beneficiary by purchasing an annuity. Mahoney v. Bd. of Trs., Boston Shipping Ass'n, 973 F.2d 968, 974 (1st Cir. 1992); Kuntz v. Reese, 785 F.2d 1410, 1412 (9th Cir. 1986) (interpreting regulation as "pertain[ing] to situations in which a pension plan

9

purchases annuities for former plan beneficiaries and participants"); 29 C.F.R. § 2509.95-1(b) ("when a pension plan purchases an annuity from an insurer as a distribution of benefits, it is intended that the plan's liability for such benefits is transferred to the annuity provider").

The annuity contract and the amended compensation agreement entitle Blossom to all of the same benefit rights, namely, the payment of $3,888.66 each month for a fifteen-year period beginning within one month of his retirement. As Blossom points out in his summary judgment brief, the annuity contract calls for Northwestern to make the payments to him, rather than to Concord General. The contract also does not allow Concord General to stop or reduce the payments during Blossom's lifetime. Blossom's benefit rights are therefore fully guaranteed by and legally enforceable against Northwestern by his sole choice under the annuity contract. Finally, Blossom does not dispute that Northwestern qualifies as an insurance company and that he received a copy of the annuity contract, which he attached as an exhibit to his complaint in this action.

Because the annuity meets the requirements of 29 C.F.R. § 2510.3-3(d)(ii)(A), Blossom does not qualify as "a participant covered under an employee benefit plan. The annuity therefore constitutes "a plan, fund or program . . . under which no

10

employees are participants covered under the plan as defined by paragraph (d)" of the regulation. 29 C.F.R. § 2510.3-3(b). Accordingly, the annuity falls outside the statutory definition of "employee benefit plan." See id.

Another court reached the same conclusion in Thompson v. Prudential Ins. Co. of Am., 795 F. Supp. 1337 (D.N.J. 1992), aff'd without opinion, 993 F.2d 226 (3rd Cir. 1993). There, the plaintiffs were participants in a retirement income plan that their employer had terminated after purchasing an annuity. Id. at 1340. The employer and the annuity provider later entered into a "formal group annuity contract" and the provider issued annuity certificates to the participants in the retirement plan. Id. The certificates stated that the provider "guarantee[d] to make the payments . . . under the terms" of the plan and the annuity contract. Id. When the employees did not begin receiving annuity payments at age sixty as they believed they should have, they sued both their employer and the annuity provider, claiming a violation of ERISA. Id. at 1341. The court, however, concluded that the annuity did not constitute an ERISA plan due to 29 C.F.R. §§ 2510.3-3(b) and (d)(2)(ii). Id.

This court concurs with the court in Thompson that an annuity purchased by an employer which entitles an employee to the same benefits provided under an employee benefit plan does

11

not itself amount to an employee benefit plan, provided the annuity meets the requirements of 29 C.F.R. § 2510.3-3(d)(2)(ii). The Northwestern annuity passes that test. As Blossom emphasizes in his summary judgment brief, Desmond explained that he decided to purchase the annuity "so that Northwestern now had the obligation to pay the monthly benefit." The applicable regulations recognize that an employer's decision to do so does not create an ERISA plan. See 29 C.F.R. § 2509.95-1. The statutory anti-alienation provision therefore does not apply to the annuity.[3] See Thompson, 795 F. Supp. at 1341.

Blossom also suggests that the anti-alienation provision contained in the compensation agreement itself invalidates the assignment of the annuity to Bank of New Hampshire. As the bank argues, however, the annuity contract does not contain any such language.[4] Furthermore, neither Northwestern nor Concord General objected to Blossom's assignment of his rights under the annuity. Because the annuity contract omits any anti-alienation clause, the inclusion of such a provision in the compensation agreement

---

[3]Accordingly, the court need not decide whether the annuity qualifies as a "top-hat plan" under 29 U.S.C. § 1051(2).

[4]In fact, a restriction on Blossom's ability to assign his rights under the annuity is conspicuous by its absence, given that the contract provides that "no amount payable under this policy will be subject to the claims of creditors of a beneficiary," rather than those of the Annuitant.

12

is immaterial.[5]  Cf. Davidowitz v. Delta Dental Plan of Calif., Inc., 946 F.2d 1476, 1481 (9th Cir. 1991) (holding that "ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan").

Blossom has failed to demonstrate that the annuity constitutes a plan within the meaning of ERISA, potentially triggering the statutory anti-alienation provision, or that the annuity contract contains its own restriction on alienation. Accordingly, his motion for summary judgment is denied, insofar as he seeks to invalidate the assignment of the annuity or his rights under it.  Bank of New Hampshire has shown as a matter of law that there is no anti-alienation provision applicable to the annuity, and Blossom has failed to come forward with any evidence disputing that proposition.  The bank's motion for summary judgment is therefore granted with respect to the annuity. Because the bank has conceded in its objection to Blossom's motion that it could not have taken an assignment of Blossom's rights under the compensation agreement itself, however, his motion for summary judgment is granted to the extent he seeks to invalidate his assignment of those rights as independent from his rights under the annuity.

---

[5]Nor does the annuity contract indicate that it is subject to the terms of the compensation agreement.

13

<u>Conclusion</u>

For the foregoing reasons, Blossom's cross-motion for summary judgment (document no. 34) is denied except to the extent he seeks to invalidate his assignment of his rights under the compensation agreement to Bank of New Hampshire as independent from his rights under the annuity.  Bank of New Hampshire's motion for summary judgment (document no. 32) is otherwise granted.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

July 16, 2004

cc:  Marc W. McDonald, Esquire
     William D. Pandolph, Esquire

14